IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILSON PEREZ ORTIZ,

Plaintiff

v.

PUERTO RICO ELECTRIC POWER AUTHORITY, et al.,

Defendants

CIVIL 03-2040 (JAF)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion for summary judgment filed by the defendants the Puerto Rico Electric Power Authority (hereinafter "PREPA"); Héctor Rosario, Tomás Candelaria Nieves, Nixa Hernández Gutiérrez, César González González and Iván Torres Torres (collectively "defendants"). (Docket No. 35, October 15, 2004.) The plaintiff, Wilson Pérez Ortiz (hereinafter "Pérez"), filed an opposition to defendants' motion on November 9, 2004. (Docket No. 40.) The case was referred to me for a report and recommendation on April 4, 2005. (Docket No. 42.) Having considered the arguments of the parties, the evidence in the record and the applicable law, it is my recommendation that defendants' motion for summary judgment be GRANTED.

I. Background

Pérez brings the present action against the defendants pursuant to 42 U.S.C. § 1983 seeking to redress the alleged infringement of the rights guaranteed to him by the First and Fourteenth Amendments of the United States Constitution. Pérez

CIVIL 03-2040 (JAF)                              2

also invokes this court's supplemental jurisdiction to assert claims under Puerto Rico's Wrongful Termination Law, 29 P.R. Laws Ann. § 185a, et seq.; Retaliation Against Public Employees Law, 10 P.R. Laws Ann. § 601, et seq.; and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. He seeks declaratory and injunctive relief as well as an award of compensatory damages, punitive damages, costs and attorney's fees. The following is a summary of the most relevant allegations in Pérez' complaint.

  Co-defendant PREPA is a public corporation. It is a legal entity separate and apart from the government of the Commonwealth of Puerto Rico and has fiscal autonomy and power to administer its own affairs. Co-defendant Héctor Rosario was at all times relevant to the complaint PREPA's Executive Director. Tomás Candelaria Nieves was PREPA's Regional Administrator of Commercial Operations for the Arecibo region. Co-defendant Nixa Hernández Gutiérrez was Candelaria's special aide. Co-defendant César González González was PREPA's Regional Administrator of Technical Operations for the Arecibo region. Finally, co-defendant Iván Torres Torres was PREPA's Interim Supervisor for the Engineering Department at the Arecibo region.

  Pérez has worked at PREPA for approximately eight years. He currently holds the position of Supervisor of Investigations and Complaints for Illegal Use of Energy in the Arecibo region. He alleges that since March of 2001, he has denounced irregularities in the use of electrical power by certain clients. The alleged

CIVIL 03-2040 (JAF)                                3

irregularities consist in the use of home made devices ("Pillos") which enabled these individuals to be provided with electrical power paying a substantially reduced amount for that service or to evade payment completely.  Pérez alleges that some of the individuals incurring in such practices were members of the Popular Democratic Party (hereinafter "PPD").  The PPD took control of the central government after the 2000 elections.

The complaint further avers that following the denouncement of illegal conduct, Pérez was subject to several adverse employment actions and retaliation.  He claims that he was divested of his duties and responsibilities and that retaliatory acts such as depriving him of a parking space and reducing his per diem were taken against him.  In addition, Pérez alleges that he was substituted as Zone Coordinator for the Emergency Plan of the Arecibo Area and pressured into covering up the same acts that he had denounced.  According to the complaint, the defendants would either take the investigations away from him or suggest that he perform acts contrary to law.  Pérez allegedly reported these incidents to the Comptroller of Puerto Rico.  On October 1, 2002, Pérez also went to the Government Ethics Office to further denounce the illegal acts that were taking place at the Arecibo office of PREPA.  The very next day, Pérez was forbidden from using his personal vehicle to perform his remaining duties contrary to what had been the practice up to that point.

CIVIL 03-2040 (JAF)                                  4

Pérez maintains that the absence of any justification for the above enumerated actions evidences the illegal motives of the co-defendants, who he submits acted and continue to act under color of state law with deliberate indifference and with reckless disregard to his constitutional rights. Additionally, Pérez asserts that he has a property interest in his career position at PREPA and that he has been deprived of duties and responsibilities to which he is entitled. He claims that the co-defendants continue to isolate and humiliate him and that he has suffered irreparable harm because of the ongoing violation to his constitutional rights. He also contends that he has no adequate remedy at law and that the public interest will not be affected if declaratory and injunctive relief is granted. Damages are requested in excess of $2,000,000.

The defendants move for summary judgment claiming that it is uncontested that defendants did not know about the complaint filed by Pérez at the Government Ethics Office; that no adverse employment action has been taken against the plaintiff; that the speech in question did not involve matters of public concern; and that the co-defendants were not personally involved in any adverse employment decision affecting Pérez. The defendants also claim to be entitled to qualified immunity.

In opposition, Pérez submits his memorandum of law in which he contends that the acts denounced by him are certainly matters of public concern and that the matters denounced outweighed any interest of the government in curbing said

CIVIL 03-2040 (JAF)                          5

speech. He specifically claims that the government can have no interest in silencing a denouncement that involves the illegal misappropriation of energy and the cover up of said conduct, particularly nowadays where the problem of corruption is widely and openly discussed. Finally, Pérez argues that the co-defendants systematically took away his duties and responsibilities, denied him the benefit of a parking space and reduced his per diem in what clearly constitutes adverse employment actions in retaliation for his speech, a question that should be resolved by the jury. He requests that defendants' motion for summary judgment be denied.

II.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-

CIVIL 03-2040 (JAF)                             6

Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

III.  Applicable Law and Analysis

A.  Local Rule 56: Failure to Properly Oppose Summary Judgment

Rule 56(c) of the local rules of this court require that "[a] party opposing a motion summary judgment shall submit with its opposition a separate, short and concise statement of material facts." Local Rule 56(c). The rules further require that the opposing statement either admit, deny or qualify the facts appearing in the moving party's statement by reference to each numbered paragraph. Id. The party opposing summary judgment must support the denials and qualifications to the facts

CIVIL 03-2040 (JAF)                          7

asserted by the moving party with citations to the record. Id. Under the rules, the facts asserted by the movant, if properly presented, are deemed admitted unless properly controverted. Local Rule 56(e).

In this case, Pérez filed a memorandum of law in opposition to defendants' motion for summary judgment. (Docket No. 40.) However, he failed to submit an opposing statement of facts as required by Local Rule 56(c). In addition, he submitted no evidence in support of his position. Therefore, it appears that the facts asserted in defendants' statement of undisputed material facts must be deemed admitted pursuant to Local Rule 56(e). In any event, since this case involves predominately questions of law, I will review the arguments of the parties and the record to determine if summary judgment is warranted.

B. First Amendment Claim

The right of a public employee to comment on matters of public concern is protected by the First Amendment and is not relinquished by virtue of government employment. Connick v. Myers, 461 U.S. 138, 140 (1983) (citing Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill., 391 U.S. 563 (1968)). However, there must be a balance between the First Amendment right to comment on matters of public concern and the state's interest as an employer in promoting efficiency of the public service it performs. Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568. Pursuant to this balancing test, a whistleblower is protected from retaliation if his or her speech interests, together

CIVIL 03-2040 (JAF)                                     8

with the public's right to hear the speech, outweigh governmental needs as an employer. See Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002).

     To determine whether an employee has an actionable first amendment claim under 42 U.S.C. § 1983, the jurisprudence has established a three-part test. Torres-Rosado v. Rotger-Sabat, 204 F. Supp. 2d 252, 258 (D.P.R. 2002), aff'd, 335 F.3d 1 (1st Cir. 2003). First, the speech engaged in must involve a matter of public concern. Connick v. Myers, 461 U.S. at 147. If the expression does not relate to a matter of public concern, but rather to a personal interest, no valid claim may be asserted. Id. Secondly, as described above, the court must determine whether the employee's First Amendment interest outweighs the government's interest in curbing the employee's expression. Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568. If these two prongs are met, then a plaintiff must show that the adverse employment action was substantially motivated by the protected expression. O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir. 1993). The first two prongs are amenable to resolution by the court for they present questions of law, but the third prong normally involves questions of fact that the jury must determine. See Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003); Nethersole v. Bulger, 287 F.3d 15, 18-19 (1st Cir. 2002). Once an employee has satisfied this test, the burden shifts to the employer to prove by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

CIVIL 03-2040 (JAF)                              9

### 1. Public Concern

The court must first determine whether the speech at issue involves matters of public concern. Torres-Rosado v. Rotger-Sabat, 335 F.3d at 11 (citing Connick v. Myers, 461 U.S. at 146). In Connick, the Supreme Court held that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. at 147-48 (footnote omitted). The First Circuit explained in O'Connor v. Steeves, that

> [w]here a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the "form and context" of the expression. On the other hand, public-employee speech on a topic which would not necessarily qualify, on the basis of its content alone, as a matter of inherent public concern (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete Connick analysis into the form and context of the public-employee expression, ... with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and, if so, whether the "form" of the employee's expression suggests a subjective intent to contribute to any such public discourse.

O'Connor v. Steeves, 994 F.2d at 913-14 (emphasis in original) (citations omitted). Thus, when the content of the speech relates on its face only to the internal affairs of the governmental agency, a more searching contextual analysis is required to determine if the speech implicates matters of public concern. Torres-Rosado v. Rotger-Sabat, 335 F.3d at 12.

CIVIL 03-2040 (JAF)                    10

In this case, there is no question that Pérez' speech touched on a matter of public concern. His denouncements related to the illegal misappropriation of energy and the possibility of a cover up as an act of political favoritism to protect the persons involved in such wrongful conduct. In that sense, the speech at issue involved the denouncement of corruption at a governmental agency (in this case a public corporation), clearly a matter of public concern.[1] See Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004) (holding that when plaintiff's speech raises the possibility of corruption in a public agency it is protected by the First Amendment); see also Guilloty-Pérez v. Pierluisi, 339 F.3d 43, 52 (1st Cir. 2003); Torres-Rosado v. Rotger-Sabat, 335 F.3d at 12; Tejada-Batista v. Fuentes-Agostini, 87 F. Supp. 2d 72, 77 (D.P.R. 2000). As a matter of law, the first prong of the test is satisfied in this case.

2. Pickering's Balancing Test

Having found that the speech at issue in this case involves a matter of public concern, it must be next determined whether the interest of Pérez in speaking out and the interest of the public in such speech outweighs the government employer's interest in avoiding disruption in the workplace. See Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568. In other words, the court

---

[1] Contrary to defendants' contention that the First Amendment claim is not actionable because the denouncements were made internally, it has been held that speech on a matter of public concern is protected even if the employee does not seek to make that speech to an audience outside the workplace. Torres-Rosado v. Rotger-Sabat, 335 F.3d at 13 n.10 (citing Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 414 (1979)).

CIVIL 03-2040 (JAF)                          11

must balance the significance of the employee's interest in communicating and the interest of the community in receiving the information, "against the governmental employer's legitimate interests in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission." O'Connor v. Steeves, 994 F.2d at 915 (citing Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568-75).

In this case the defendants have limited themselves to argue that the speech did not involve a matter of public concern. They present nothing from which the court can balance the interest that PREPA may have in avoiding disruptions in the workplace and inefficiencies in carrying out their public service mission. Furthermore, they submit nothing to suggest that their interest is more important than the public's interest in knowing about possible corruption, impropriety or malfeasance on the part of PREPA officials who allegedly protected clients found to be stealing electricity only because they are affiliated to a particular political party. And as stated by the First Circuit, in the balance of competing interests, "an employee's First Amendment interest is entitled to greater weight where he is acting as a whistleblower in exposing government corruption." Guilloty-Pérez v. Pierluisi, 339 F.3d at 53 (quoting Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988)). Consequently, since the defendants fail to demonstrate a legitimate interest in curtailing Pérez' disclosures, the first amendment interest takes precedence. The second prong is also satisfied here.

CIVIL 03-2040 (JAF)                              12

3. Substantial or Motivating Factor

The next step in the First Amendment inquiry is whether the protected speech was the substantial or motivating factor in the adverse employment actions taken against Pérez. Mullin v. Town of Fairhaven, 284 F.3d 31, 38 (1st Cir. 2002) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287.) While the issue of motivation is generally a jury question, the court must review the complete record—specially in light of Pérez' failure to properly oppose defendants' motion for summary judgment—to determine if there is a genuine issue of material fact for the jury to decide. The defendants argue that plaintiff cannot sustain his allegation that an adverse employment action was taken against him in retaliation for the protected speech. First, the defendants argue that the removal of Pérez' parking privileges was not an adverse employment action because he currently parks on the road in front of the building which is just 30 or 40 feet away. Second, with respect to the reduction in his per diem, the defendants argue that such was a benefit given to employees when they used their personal vehicles and was not part of plaintiff's salary or compensation. Accordingly, the defendants argue that the reduction cannot be claimed as an adverse employment action. The defendants also maintain that the instruction not to leave the office and not to visit certain towns was not an adverse employment action because it did not reduce the amount of work he had.

However, contrary to defendants' contention, the actions allegedly taken against Pérez would be actionable under section 1983 and the First Amendment if

CIVIL 03-2040 (JAF)                          13

taken by the defendants to retaliate against plaintiff for speaking out about matters of public import. In <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 76 (1990), the Supreme Court held that politically motivated employment decisions short of actual or constructive discharge infringe a government employee's first amendment rights because "there are deprivations less harsh than dismissal that nevertheless press state employees … to conform their beliefs and associations to some state-selected orthodoxy." <u>Id.</u> at 75. The <u>Rutan</u> Court made reference to promotion, transfers and recall decisions. <u>Id.</u> at 76. And the Court noted that the First Amendment protects a public employee not only from patronage dismissals, but also from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee … when intended to punish her for exercising her free speech rights." <u>Id.</u> n.8 (quoting <u>Rutan v. Republican Party of Ill.</u>, 868 F.2d 943, 954 n.4 (7th Cir. 1989)). Therefore, defendants' motion for summary judgment is not going to take them as far as they would want to go.[2] But it will take them far enough.

---

[2] The actions alleged in Pérez' complaint, i.e., divesting him of investigative duties, the reduction and subsequent elimination of his per diem, the taking away of benefits such as parking space and use of private vehicle, etc., would all qualify as adverse employment actions under footnote 8 of <u>Rutan</u> if found to have been taken to punish Pérez' for exercising his First Amendment rights. I do not take a position as to whether they would also qualify as sufficiently severe employment actions under the standard set forth in <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d 1209, 1217 (1st Cir. 1989) and its progeny. Under said standard, it must be shown by clear and convincing evidence that the action of the employer "result[ed] in a work situation 'unreasonably inferior' to the norm for the position." <u>Id.</u> at 1218. Because Pérez' claims fail as a matter of law in other respects, I find it unnecessary to enter into such analysis.

CIVIL 03-2040 (JAF)                                14

Plaintiffs' failure to submit any evidence to show that his protected speech was the substantial or motivating factor in the adverse employment actions taken against him ultimately proves fatal to his case. As stated above, plaintiff submits no statement of contested facts to controvert defendants' statement of uncontested facts. Similarly, he submits no evidence whatsoever in support of his position. I understand that some of the issues presented in this case are amenable to resolution by the court as a matter of law. But without more, it is impossible for Pérez to satisfy his burden on summary judgment. Pérez submits only a memorandum of law in which he limits himself to say that the issue of motivation "is typically a matter within the jury's keen." (Memorandum of Law, Docket No. 40, at 12.)

The law is settled that plaintiff bears the burden of proving that the protected speech was a motivating factor in the adverse employment action. Guilloty-Perez v. Pierluisi, 339 F.3d at 56. And while the question of motivation is usually one for the finder of fact, that does not mean that it cannot be resolved by the court at the summary judgment stage if plaintiff's showing is insufficient.[3] Id.; see also Lewis v. City of Boston, 321 F.3d at 220. Plaintiff must produce some facts linking the adverse employment action to his protected conduct. Guilloty-Pérez v. Pierluisi, 339 F.3d at 56. It is also clear that a party "may not rest upon the mere allegations or denials in [his] pleading." Torres-Rosado v. Rotger-Sabat, 335 F.3d at 9 (quoting

---

[3] A plaintiff does not need to submit direct evidence of his employer's motivations. Guilloty-Pérez v. Pierluisi, 339 F.3d at 55. He or she can rely on circumstantial evidence. Lewis v. City of Boston, 321 F.3d at 219.

CIVIL 03-2040 (JAF)                              15

Fed. R. Civ. P. 56(e)). "An unsworn assertion of fact in the complaint (or in a brief) is not enough to create a material factual dispute." <u>Torres-Rosado v. Rotger-Sabat</u>, 335 F.3d at 9.

In this case, a review of the evidence of record and all reasonable inferences in the light most favorable to Pérez reveals that he cannot satisfy his burden of presenting sufficient evidence to show that his protected conduct was the motivating factor or at least a substantial factor in the adverse employment actions taken against him. There are no facts submitted by him linking the protected conduct to any of the alleged detrimental employment decisions. Pérez merely relies on the facts alleged in the complaint. With such an inefficient showing as to defendants' motivations, Pérez fails to shift the burden to the defendants to demonstrate that they would have taken the same action, protected speech aside. He simply fails to live up to his burden at the summary judgment stage.

4. Personal Involvement

Finally, in addition to his failure to submit evidence on the issue of motivation, the record is barren of any evidence pointing to the personal involvement of some of the defendants in this case. For instance, there is nothing in the record showing any actions taken by co-defendant Héctor Rosario. Also, the evidence as to co-defendant Tomás Candelaria Nieves' participation is scanty at best. This I gather from a review of the evidence submitted by the defendants. Where the record contains a reference of an adverse action taken by one of the co-defendants

CIVIL 03-2040 (JAF)                              16

(i.e., reducing per diem, or the denial of a parking space), it lacks evidence, direct or circumstantial, linking the protected speech to said adverse employment action. And it is hornbook law that section 1983 liability cannot be imposed under a theory of respondeat superior; only upon state actors personally involved in the constitutional depravation. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). Therefore, there being no material factual dispute worthy of a trial in this case, I recommend that defendants' motion for summary judgment be GRANTED.[4]

IV. Conclusion

In view of the above, it is my recommendation that defendants' motion for summary judgment be GRANTED and that the complaint be dismissed in its entirety. I also recommend that plaintiff's state-law cause of action be dismissed without prejudice.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection

---

[4] In view of my conclusions above, I find it unnecessary to address the issue of qualified immunity raised by the defendants. Furthermore, having recommended dismissal of the federal causes of action in this case, I also recommend that the court decline to exercise supplemental jurisdiction over the state-law causes of action. See González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) ("Under 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'"); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004), cert. denied, 125 S. Ct. 1064 (2005); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Dismissal of said causes of action should be without prejudice.

CIVIL 03-2040 (JAF)                                    17

thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 15th day of April, 2005.


                                    S/ JUSTO ARENAS
                          Chief United States Magistrate Judge